IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID J. GAGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 CV 7664 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) Jeffrey T. Gilbert |
| Commissioner of Social Security, | ) Magistrate Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant David J. Gago ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment. [ECF No. 8]. Claimant filed his Brief in Support of Reversing the Decision of the Commissioner of Social Security. [ECF No. 19]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion [ECF No. 19] is granted. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Claimant filed an application for DIB on November 5, 2013, alleging a disability onset date of January 14, 2013. (R. 17.) The application was denied initially on April 16, 2014, and upon reconsideration on September 11, 2014, after which Claimant requested an administrative hearing

before an administrative law judge ("ALJ"). (*Id.*) On July 27, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ William Spalo. (R. 17-29.) The ALJ also heard testimony from vocational expert ("VE") Stephen Sprauer. (R. 27.)

On August 25, 2016, the ALJ denied Claimant's application for DIB, based on a finding that he was not disabled under the Act. (R. 14-29.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs").[1] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date of January 14, 2013. (R. 19.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease of the lumbar spine, depression, and anxiety. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. 20.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[2] and concluded that Claimant was capable of performing light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> He is limited to occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds. He can perform frequent balancing and climbing ramps or stairs. He must avoid concentrated exposure to dangerous machinery and unprotected heights. Work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements;

---

[1] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

involving only simple, work-related, decisions; and with few, if any, work place changes. He should have only brief and superficial interaction with the public.

(R. 22.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 27.) Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 28.) The Appeals Council denied Claimant's request for review on August 22, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the district court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of

3

the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

On appeal, Claimant asserts that the ALJ made three errors. First, Claimant contends that the ALJ improperly discounted the opinion of his treating physician. Second, Claimant argues that the ALJ's analysis of the State agency psychological consultant's opinion was legally insufficient. Third, Claimant argues that the ALJ improperly assessed his subjective symptoms statement.

### A. The Treating Physician's Opinion

Claimant contends that the ALJ improperly discounted the opinion of his treating physician, Dr. Adeoye. [ECF No. 19] at 9-13. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[3] 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must

---

[3] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

4

be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell*, 627 F.3d at 306.

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)–(6).

Dr. Adeoye completed a Mental Impairment Questionnaire (RFC & Listings) on April 7, 2016, indicating that Claimant was markedly limited in sixteen out of seventeen "mental abilities and aptitudes" to do unskilled work and moderately limited in the one remaining area. (R. 536.) He opined that Claimant's severe depression and poor intellectual functioning would cause marked limitations in sixteen out of the seventeen areas required to perform unskilled work. (*Id.*) Dr. Adeoye further opined that he anticipated that Claimant would be absent from work more than three times a month because of his impairments. (R. 536.)

The ALJ appeared to reject Dr. Adeoye's opinion without assigning any weight to it and offered three reasons for doing so. (R. 27.) The ALJ reasoned that Dr. Adeoye's Mental Impairment Questionnaire answers were inconsistent with his treatment notes. (*Id.*) In addition, the ALJ concluded that Dr. Adeoye failed to offer any precise functional limitations and that his conclusion that Claimant would miss work more than three times monthly was an impermissible

5

administrative finding. (*Id.*) The Court finds that the reasons offered by the ALJ are insufficient to discount Dr. Adeoye's medical opinion as a treating physician, an error necessitating remand.

First, the ALJ reasoned that Dr. Adeoye's Mental Impairment Questionnaire answers were inconsistent with his treatment notes because his treatment notes did not document chronic mental symptoms such as hallucinations, paranoia, severe anxiety, or suicidal ideation occurring on a persistent basis. (*Id.*) But the ALJ did not fairly characterize the totality of Dr. Adeoye's clinical findings in the record. While Dr. Adeoye's treatment notes do not reveal persistent hallucinations, paranoia, severe anxiety, or suicidal ideation (R. 628-746) they are replete with clinical findings supportive of the limitations assessed in Dr. Adeoye's Mental Impairment Questionnaire. These clinical findings include progress notes that report an ongoing diagnosis of "major depressive disorder," an updated diagnosis of "major depressive affective disorder, recurrent episode, severe, specified as with psychotic behavior," and in one progress note a "short attention span." (*Id.*) *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[a]lthough by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records"). The ALJ apparently ignored or disregarded without any explanation Dr. Adeoye's substantive clinical findings in evaluating the Mental Impairment Questionnaire, instead focusing only on what the ALJ characterized as inconsistent treatment notes. This selective "cherry picking" prevents the Court from assessing the reasonableness of the ALJ's decision to discount Dr. Adeoye's opinion. Without more explanation or elaboration by the ALJ, Dr. Adeoye's clinical findings appear to be fully supportive of his opinion contained in the Mental Impairment Questionnaire.

Second, the ALJ stated that Dr. Adeoye provided no precise functional limitations and that his opinion that Claimant would be absent from work more than three times monthly was an administrative finding, not a medical opinion. While Dr. Adeoye did provide what could be fairly

6

characterized as "precise functional limitations" when he completed the Mental Impairment Questionnaire, which listed marked limitations in such functions as interacting with the public or asking simple questions, he was not required to provide a function-by-function analysis. *Minett v. Colvin*, No. 13 C 4717, 2015 WL 7776560, at *3 (N.D. Ill. Dec. 2, 2015); *see also Nash v. Colvin*, No. 12 C 6225, 2013 WL 5753796, at *12 (N.D. Ill. Oct. 23, 2013); *Colson v. Colvin*, 120 F. Supp. 3d 778, 791–92 (N.D. Ill. 2015) ("Dr. Putini's failure to provide [a function-by-function analysis] ... does not support the ALJ's decision to disregard her opinions."). Thus, it was improper for the ALJ to use Dr. Adeoye's failure to provide a function-by-function analysis as a basis for discounting Dr. Adeoye's opinion.

In addition, Dr. Adeoye's opinion that Claimant would miss work more than three times monthly as a result of his impairments was in response to a question on the Mental Impairment Questionnaire that asked him to say, on average, how often he anticipated Claimant would be absent from work. (R. 536). Dr. Adeoye notes on the Mental Impairment Questionnaire itself indicate that he based his findings on Claimant's mental health and intellectual functioning both of which are medical findings within his expert province. (*Id.*)

Finally, even assuming the ALJ provided "good reasons" for not affording Dr. Adeoye's opinion controlling weight, which the Court finds he did not do, the ALJ was required to address the factors listed in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96-2p; *see* 20 C.F.R. § 404.1527(c); *Yurt*, 758 F.3d at 860; *Moss*, 555 F.3d at 561. Here, the ALJ did not assign Dr. Adeoye's opinion any discernible weight and failed to address many of the enumerated factors in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment

7

relationship, the frequency of examinations, or whether Dr. Adeoye had a relevant specialty, which he did have in psychiatry. Multiple factors favor crediting Dr. Adeoye's opinion, and "proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Adeoye's] opinion." *Campbell*, 627 F.3d at 308. At a minimum, the ALJ was required to address these factors in some way and articulate how they impacted his opinion. Accordingly, remand is necessary for the ALJ to properly analyze and explain the weight to be afforded to the opinion of Dr. Adeoye.

## B. The Mental RFC Determination

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do de-spite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The ALJ's RFC assessment must contain a narrative discussion describing how the evidence supports the ALJ's conclusions and explaining why any medical source opinion was not adopted if the ALJ's RFC assessment conflicts with such an opinion. SSR 96-8p, at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts."). Failing to explain how an ALJ arrived at the RFC conclusions is "in itself sufficient to warrant reversal of the ALJ's decision." *Briscoe ex rel. Taylor v. Barnhart*, 435 F.3d 345, 352 (7th Cir. 2005). Here, the ALJ failed to comply with the requirements of SSR 96-8p with respect to Claimant's mental RFC, an error necessitating remand.

*1. Functional Limitations*

First, Claimant argues that the ALJ failed to include the limitations expressed by State agency psychological consultant, Dr. Kladder, in his residual functional capacity assessment. The Court agrees with Claimant.

Dr. Kladder, whose opinion the ALJ afforded great weight, opined that Claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to handle work in coordination with or in proximity to others without being distracted, to carry out detailed instructions, and to maintain attention and concentration for extended periods was moderately limited. (R. 100.) In addition, Dr. Kladder found that while Claimant had these limitations, Claimant also "appear[ed] to have the cognitive abilities necessary to perform tasks on a sustained basis without extraordinary accommodations." (*Id.*)

The ALJ said he accommodated Claimant's depression and anxiety by limiting him to simple, routine, and repetitive tasks as well as limiting Claimant to brief and superficial interactions with the public. (R. 25.) However, the ALJ did not adopt or address the State psychologist's opinion with respect to Claimant's ability to complete a normal workday or to work in coordination with or in proximity to others without being distracted by them, to carry out detailed instructions, or to maintain attention and concentration nor did he explain why he did not do so. (*Id.*) Instead, the ALJ simply limited the tasks, pace, decisional capacity, and public interactions of Claimant. (*Id.*) These limitations only address a small number of issues raised by Dr. Kladder. Most specifically, the ALJ's limitations do not speak at all to Claimant's moderate limitation in working in close proximity to others. Limiting Claimant's interactions with the public does nothing to address why the same limitation was not extended to Claimant's interactions with

coworkers, which is the issue Dr. Kladder specifically addressed. Indeed, the ALJ himself noted that Claimant had "moderate limitations" in social functioning. (R. 21.) Yet the ALJ only limited Claimant's interactions with the public leaving similar interactions with coworkers unaddressed. (*Id.*)

The ALJ cannot selectively accommodate some restrictions while ignoring others without providing some explanation for why he disregarded them. Further, Dr. Kladder's opinion that Claimant maintained the "cognitive abilities" to perform tasks without extraordinary accommodations does not give the ALJ carte blanche to simply ignore the other limitations found by Dr. Kladder. These limitations must be discussed in his decision.

"The ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). While the ALJ was not required to adopt the State agency or treating physician's opinion in its entirety, he was required to build a "logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ did not do so here. The ALJ failed to address the State agency psychologist's mental RFC assessment that included limitations on Claimant's ability to complete a workday or workweek, to work in close proximity with coworkers, to carry out detailed instructions, and to maintain attention and concentration. The ALJ offered minimal explanation to support his mental RFC assessments outside of stating that "the State agency psychological consultant opined on reconsideration that the claimant could perform tasks on a sustained basis without extraordinary accommodations." (R. 26.) This does not adequately explain why the ALJ's mental RFC differs from the State agency psychologist's mental RFC opinion when the ALJ gave great weight to his opinion.

In sum, the ALJ must explain why he chose not include accommodations for Claimant in the areas of completing a workday or workweek, interacting with coworkers, carrying out detailed instructions, and maintaining concentration or attention. *See* SSR 96-8p, at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts."). Absent any meaningful explanation of why he disregarded these portions of the State agency psychologist's mental RFC, the Court finds that the ALJ failed to provide the narrative assessment of Claimant's functional capacity that SSR 96-8p requires. *See Gidley v. Colvin*, 2013 WL 6909170, at *12. Remand is therefore required for an explanation of this inconsistency in the ALJ's mental RFC determination.

### 2. *Hypothetical Question*

Claimant further asserts that the ALJ erred by failing to include the State agency psychologist's RFC assessment in the hypotheticals posed to the VE at the hearing. Here, too, the ALJ failed to incorporate all of Dr. Kladder's findings concerning Claimant's limitations. As stated above, Dr. Kladder noted moderate limitations in Claimant's ability to complete a workday or workweek, to work in proximity with others, to carry out detailed instructions, and to maintain attention and concentration. (R. 100.) Again, the ALJ gave great weight to the psychologist's opinion regarding Claimant's mental functional capabilities and limitations, and yet the ALJ chose to disregard portions of the psychologist's assessment in the hypotheticals posed to the VE. Although the ALJ was not required to adopt every portion of the State agency psychologist's opinion in formulating Claimant's RFC, he is required to fully apprise the VE by including Claimant's limitations in his hypotheticals. The ALJ fails to mention any limitations on completing a workday or workweek, interacting with coworkers, carrying out detailed instructions, or maintaining attention and concentration during his questioning of the VE. Indeed, the only

11

limitation mentioned by the ALJ in his questioning of the VE that hinted at any mental restrictions was his inclusion of limited work-based decision making and brief and superficial interactions with the public. (R. 71-73.) Thus, the VE's determination that Claimant may be able to perform the requirements of occupations such as cleaner housekeeper, advertising material distributor, or marker is based on incomplete information.

"If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Seventh Circuit cases also "suggest that the most effective way to ensure that the VE is apprised fully of claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ failed to incorporate all of Claimant's limitations in the three hypotheticals posed to the VE. (R. 71-73.) As a result, the VE's assessment of the jobs available to Claimant is necessarily called into doubt, as is the ALJ's conclusion that Claimant is not disabled under the Act. The failure of the ALJ to build an "accurate and logical bridge" between evidence of mental impairments, the effect of these impairments, and the hypotheticals posed to the VE requires a remand for further proceedings. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *O'Connor-Spinner*, 627 F.3d at 620-21.

### C.  Other Issues

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. Neither the Commissioner nor Claimant should draw any conclusions from the Court's decision not to address Claimant's other arguments. Nor, obviously, is the Court making any determination about whether or not Claimant is disabled.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to consider all the evidence in the record, expand the record if necessary, and build a logical bridge between the evidence and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion [ECF No. 19] is granted. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 10, 2018